**IN THE COURT OF APPEALS OF IOWA**

No. 14-0905
Filed August 5, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RICARDO RAMON BERNAL,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark R. Lawson (trial) and Joel W. Barrows (sentencing), Judges.

A defendant appeals his conviction for arson.  **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Linda J. Hines, Assistant Attorneys General, Michael J. Walton, County Attorney, and William R. Ripley, Assistant County Attorney, for appellee.

Considered by Vogel, P.J., Mullins, J., and Eisenhauer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MULLINS, J.**

Ricardo Bernal appeals from his conviction for arson in the first degree, claiming the district court improperly denied his motion to suppress and he received ineffective assistance of counsel. Bernal claims his police interview from October 22, 2013, should be suppressed because his *Miranda* rights waiver and the statements he made were involuntary due to his consumption of Klonopin and marijuana. Bernal also claims ineffective assistance of trial counsel on several grounds. Because we conclude the waiver and statements were voluntary and he cannot prove his trial counsel was ineffective, we affirm.

## I. BACKGROUND FACTS

On September 3, 2013, firefighters responded to a fire on the front porch of a house in Davenport. Lieutenant Morris investigated the fire after determining it was not natural. On October 22, 2013, Lieutenant Morris and others interviewed Bernal concerning the arson and other charges. Bernal was interviewed for six hours, starting at approximately 9:00 a.m. Bernal admits he had ingested three Klonopin pills and smoked marijuana around 8:00 a.m. the day of the interview.

Bernal was charged with arson in the first degree, and the case proceeded to trial on April 7, 2014. Testimony at trial included Lieutenant Morris and Heather Shafer, who drove Bernal to the scene of the fire the night of the arson. Shafer was allowed to testify Bernal fired shots into the air as the vehicle approached the scene. Lieutenant Morris testified at trial that he found a bucket

in Bernal's garage that "someone had told us was used during the arson" to carry the gasoline.

The jury found Bernal guilty as charged, and Bernal was sentenced to a twenty-five year indeterminate term of incarceration. He now appeals his conviction.

## II. INVOLUNTARY WAIVER OF *MIRANDA* RIGHTS AND INVOLUNTARY STATEMENTS

Bernal claims his waiver of his *Miranda* rights and any statements he made during the interview were involuntary because he was under the influence of prescription drugs and marijuana. When issues involving violations of constitutional safeguards are raised, we review the totality of the relevant circumstances de novo. *Rinehart v. State*, 234 N.W.2d 649, 658 (Iowa 1975).

### A. Involuntary Waiver of *Miranda* Rights

The State has the burden to prove by a preponderance of the evidence a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *State v. Vincik*, 398 N.W.2d 788, 789 (Iowa 1987). "For a waiver to be made knowingly and intelligently, 'the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *State v. Ortiz*, 766 N.W.2d 244, 251 (Iowa 2009) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1996)). Bernal challenges his waiver because of his claimed inability to understand the rights he relinquished due to his alleged impairment.

Bernal was given a written form to convey the *Miranda* warnings. Each warning was read aloud to him, he orally indicated that he understood, he

initialed each warning, and he signed the form. The district court found Lieutenant Morris, a paramedic, and Sergeant Smull, both officers trained to recognize signs of incapacitation, credible in their testimony that there was no evidence Bernal was under the influence or impaired. The district court also took into consideration the audio/video recording of the interview, observing Bernal was able to quickly and accurately draw a map for the officers, he asked clarifying questions to the officers, and he knew his rights enough to refuse to respond to some questions. We agree with the district court's findings Bernal was not impaired to the extent to render the waiver involuntary.

## B. Involuntary Statements

To be admitted as evidence, incriminating statements must be made voluntarily. *State v. King*, 492 N.W.2d 211, 215 (Iowa Ct. App. 1992). Many factors bear on the issue of voluntariness. These include:

> [the] defendant's age, whether defendant had prior experience in the criminal justice system, whether defendant was under the influence of drugs, whether *Miranda* warnings were given, whether defendant was mentally "subnormal," whether deception was used, whether defendant showed an ability to understand the questions and respond, the length of time defendant was detained and interrogated, defendant's physical and emotional reaction to interrogation, whether physical punishment, including deprivation of food and sleep, was used.

*State v. Payton*, 481 N.W.2d 325, 328-29 (Iowa 1992) (internal citations omitted).

Bernal's voluntary ingestion of drugs prior to his interview does not automatically make his statements involuntary—"The mere fact one is under the influence of a drug at the time of making an inculpatory statement does not render the statement involuntary, although it is a proper factor for the jury to

consider in weighing the evidence." *State v. Wilson*, 264 N.W.2d 614, 614-15 (Iowa 1978).

Bernal was nineteen and had completed the tenth grade. Bernal had some prior involvement with the criminal justice system. He showed no signs of the influence of drugs in the audio/video recording of the interview, and the officers interviewing him testified they did not see any signs of impairment. Bernal was able to answer questions, ask clarifying questions, and draw a map to answer a question. Bernal was interviewed for six hours during the day but was given frequent breaks and opportunities to use the restroom. Bernal was offered water and was not deprived of food or sleep. Bernal was not physically harmed or threatened. These factors, taken together, support the district court's findings that Bernal's statements were voluntary.

We therefore affirm the district court's denial of Bernal's motion to suppress.

## III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Bernal also makes a claim of ineffective assistance of trial counsel based on four grounds: failing to object to prior bad acts mentioned in Shafer's testimony; failing to object to inculpatory hearsay evidence; posing a question that exposed the jury to bad acts; and failing to move to suppress the audio/visual recording of the interview and any references to the interview based on threats and promises of leniency.

Ineffective-assistance-of-counsel claims are reviewed de novo. *State v. Gines*, 844 N.W.2d 437, 440 (Iowa 2014). Bernal must show his counsel failed to perform an essential duty and he was prejudiced as a result. *See Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984); *State v. McPhillips*, 580 N.W.2d 748, 754 (Iowa 1998). Both prongs of this test must be satisfied, and if we find one prong to be lacking, we need not decide the remaining element. *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). In order to be successful in his claims, Bernal "must overcome the strong presumption counsel's actions were reasonable under the circumstances and fell within the normal range of professional competency." *State v. Hildebrant*, 405 N.W.2d 839, 841 (Iowa 1987). To establish the second prong, the defendant must show "counsel's errors were so serious as to deprive the defendant of a fair trial. The defendant must prove by a reasonable probability the result of the proceeding would have differed but for counsel's errors." *Gines*, 844 N.W.2d at 441 (internal citations omitted). Ineffective-assistance-of-counsel claims are reserved for postconviction relief when they may involve improvident trial strategy or miscalculated tactics and more record is required. *State v. Goff,* 342 N.W.2d 830, 838 (Iowa 1983). If additional record is not required, the claim can be decided on direct appeal. *Id.* In this matter we find the record sufficient to resolve each claim of ineffective assistance of counsel raised by Bernal.

Bernal's first claim of ineffective assistance of counsel is counsel's failure to object to prior bad acts mentioned in Shafer's testimony. Shafer was allowed to testify Bernal fired two shots into the air when approaching his neighborhood in her truck. Shafer also testified she found Bernal to be intimidating. Even if the failure to object to this testimony amounts to a failure of an essential duty, Bernal admitted in his interview he fired the gun. Because the jury would have been

exposed to this information even without Shafer's testimony, it is not prejudicial, and trial counsel was not ineffective for failing to object to Shafer's testimony. *See State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011) ("One way to show the tainted evidence did not have an impact on the jury's verdict is to show the tainted evidence was merely cumulative.").

Bernal's second claim of ineffective assistance of counsel is a failure to object to inculpatory hearsay evidence. In describing his search for the bucket used in the arson within Bernal's garage, Lieutenant Morris testified someone had told investigators where to find the bucket. However, Bernal made statements regarding the bucket in his interview, making the potential hearsay evidence merely cumulative and therefore not prejudicial. *See id.*

Bernal's third claim of ineffective assistance of counsel involves his counsel posing a question to Lieutenant Morris that exposed the jury to Bernal's prior bad acts. During cross examination, trial counsel asked Lieutenant Morris "You had arrested him earlier, and then brought him down to the station for this discussion, correct?" Lieutenant Morris responded, "On a separate charge." In evaluating whether this testimony was prejudicial, we consider the fact the jury was never made aware of what the separate charge was, and the jury was instructed to disregard the evidence immediately after the testimony was given. Juries are presumed to follow instructions. *State v. Proctor*, 585 N.W.2d 841, 845 (Iowa 1998). It is not reasonably probable this error would have changed the outcome of the proceeding.

Bernal's fourth and final claim of ineffective assistance of counsel pertains to counsel's failure to move to suppress the audio/video recording of Bernal's interview and any references to the interview on grounds that police made threats and promises of leniency. He also faults counsel for failing to request a limiting instruction because of the accusatory statements made by police officers in the video. Bernal argues the police made promises of leniency trying to induce Bernal to cooperate with them and also threatened him with federal charges. Bernal argues these threats and promises constitute police coercion, making the use of his statements during the interview forbidden. *State v. Ware*, 205 N.W.2d 700, 703 (Iowa 1973). The State contends no threats or promises occurred during the interview.

To determine whether Bernal's statements to the police were voluntary or coerced, we take a totality-of-the-circumstances approach in which a statement is deemed voluntary if it is "the product of an essentially free and unconstrained choice, made by the defendant whose will was not overborne or whose capacity for self-determination was not critically impaired." *Payton*, 481 N.W.2d at 328. A promise to inform the prosecuting attorney of the defendant's cooperation does not constitute a promise of leniency. *State v. Whitsel*, 339 N.W.2d 149, 153 (Iowa 1983). We consider the same factors here as we did in determining whether Bernal's statements were voluntary because of his alleged drug use. These include:

> [the] defendant's age, whether defendant had prior experience in the criminal justice system, whether defendant was under the influence of drugs, whether *Miranda* warnings were given, whether defendant was mentally "subnormal," whether deception was used,

whether defendant showed an ability to understand the questions and respond, the length of time defendant was detained and interrogated, defendant's physical and emotional reaction to interrogation, whether physical punishment, including deprivation of food and sleep, was used.

*Payton*, 481 N.W.2d at 328-29 (internal citations omitted).

A review of the audio/visual recording of the interview does not reveal any evidence showing Bernal's free will was constrained or that his capacity for self-determination was critically impaired. Statements made by the officers concerning cooperation do not go beyond statements that Bernal's cooperation would be made known to a prosecuting attorney. Counsel had no duty to object to admission of the interview on grounds that the statements were made as a result of police coercion.

Bernal argues the officers made accusatory statements during the interview, and the jury should have been instructed as to how to treat the accusatory statements. The State contends only certain portions of the audio/video recording of the interview were shown to the jury, and none of those portions contained any accusatory statements. Upon our review of the portions of the audio/visual recording of the interview shown to the jury, we determine no accusatory statements were made. Counsel had no duty to request a limiting instruction on how the jury was to treat accusatory statements made by police during the interview when the jury did not hear any accusatory statements.

## IV. CONCLUSION

Bernal's behavior on the audio/visual recording and the testimony of officers who interviewed him indicate that Bernal voluntarily waived his *Miranda* rights and his statements were voluntary. Thus, the district court correctly denied

Bernal's motion to suppress. Bernal also failed to prove his attorney rendered ineffective assistance because it is not reasonably probable that the outcome of the trial would have been changed if counsel had objected to Shafer's testimony, to Lieutenant Morris's testimony, or if counsel had not asked a question that revealed Bernal's prior bad acts. There was no evidence suggesting police coerced Bernal's statements during the interview, and no accusatory statements made by police were shown to the jury on the audio/visual recording. We affirm Bernal's conviction and sentence.

**AFFIRMED.**